# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JERZY SAPIEYEVSKI,

    *Plaintiff*,

v.

LIVE NATION WORLDWIDE, INC.,

    *Defendant*.

Civil Action No. 18-830 (TJK)

## MEMORANDUM OPINION & ORDER

Plaintiff Jerzy Sapieyevski brings this action against Defendant Live Nation for alleged violations of the Lanham Act. He brings claims of trademark infringement, unfair competition, and trademark dilution. Live Nation has moved to dismiss the complaint for failure to state a claim, arguing that its conduct at issue is protected under the First Amendment and therefore not subject to liability under the Lanham Act. It also argues in the alternative that Sapieyevski has failed to adequately plead a claim for trademark dilution. For the reasons explained below, Live Nation's motion is granted in part and denied in part.

## I. Background

Jerzy Sapieyevski is a self-described musician, composer, producer, and professor of music. ECF No. 1 ("Compl.") ¶ 1. He alleges that, as early as 1999, he began using the mark "MUSICHAPPENS" "for various music and music related services" that he provides, including "publications, online music[,] and music related resources and education materials." *Id.* ¶¶ 8, 10. And in 2002, Sapieyevski federally registered his mark with the United States Patent and Trademark Office (USPTO). *Id.* ¶¶ 8, 12. The registration describes "MUSICHAPPENS" to signify "[m]usic composition for others; music composition and transcription for others; music

production and publishing services; entertainment services, namely, music production; live music performance; [and] multimedia entertainment software production services." *Id.* ¶ 12.

Sapieyevski alleges that in 2017, Live Nation Worldwide, Inc., ("Live Nation") began using the mark "MUSIC HAPPENS HERE" to promote "an initiative in partnership with Spotify USA, Inc.[,] and Hilton Hotels." *Id.* ¶ 16 (edits to capitalization). In April 2017, Live Nation applied to register its mark with the USPTO. *Id.* ¶ 17. The application stated that "MUSIC HAPPENS HERE" would be used to identify the following services:

> Production of audiovisual recordings and multimedia entertainment content featuring music, popular culture, entertainment and social commentary; distribution of audiovisual recordings and multimedia entertainment content featuring music, popular culture, entertainment and social commentary via the internet and mobile applications; [and] [p]roviding non-downloadable pre-recorded audiovisual content featuring music, artistic performances, popular culture, live music entertainment, entertainment news and social commentary via the Internet.

ECF No. 1-1 at 4. After receiving a letter of protest from Sapieyevski, however, the application was referred to a USPTO examining attorney, who made an initial determination to refuse Live Nation's application due to a likelihood of confusion with Sapieyevski's mark. *See id.*

Sapieyevski alleges that Live Nation has continued to use the mark "MUSIC HAPPENS HERE," thereby "knowingly and willfully infring[ing]" his own registered mark. Compl. ¶¶ 18–21. He claims that "[b]oth parties offer substantially similar services under [their] mark[s] in the same field of endeavor"—such as "music services on-line, in-person, and as written materials about music." *Id.* ¶ 20. He further alleges that they both "target music listeners, students, and concertgoers." *Id.*

On April 11, 2018, Sapieyevski commenced this action, filing his complaint bringing three claims under the Lanham Act, 15 U.S.C. § 1051 *et seq.* Count I alleges "infringement of a federally registered [trade]mark," including by use of "the domain name

2

musichappenshere.com." Compl. at 6 & ¶¶ 29–33 (edits to capitalization). Count II alleges "unfair competition and false designation of origin," asserting that Sapieyevski's use of his mark in connection with his music services "acquired secondary meaning indicating that the source of origin of [those] music services is [Sapieyevski]." *Id.* at 7 & ¶¶ 34–41 (edits to capitalization). And Count III alleges "trademark dilution," claiming that Live Nation has used a "confusingly similar variation" of Sapieyevski's mark "to advertise and market music events [and] cause dilution . . . by blurring and obscuring" Sapieyevski's mark. *Id.* at 8 & ¶¶ 41–45 (edits to capitalization).

A few months later, Live Nation moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 8 ("MTD"). In its motion, Live Nation explains that "*Music Happens Here*" is the title of a "seven-episode original video series." *Id.* at 1–2. According to Live Nation, the series "showcases some of the most iconic places where music has been created and performed," with "[e]ach 25–40 minute video episode featur[ing] a different city and highlight[ing] artists and performances." *Id.* at 2. Live Nation argues that because "*Music Happens Here*" is the title of an audiovisual work, Live Nation's use of the mark is protected under the First Amendment and therefore immune from liability under the Lanham Act. *See id.* at 4. In the alternative, Live Nation argues that Sapieyevski has failed to adequately allege the requisite elements of a trademark-dilution claim. *Id.* at 11. Sapieyevski opposed the motion, *see* ECF No. 9 ("Opp'n"), and Live Nation filed a reply, *see* ECF No. 10 ("Reply").[1]

---

[1] Sapieyevski moved to strike Live Nation's reply, arguing that it was not timely filed. *See* ECF No. 11. In the alternative, he sought leave to file a Surreply to "correct[] several misstatements and distortions stated for the first time in [Live Nation's] Reply." *Id.* at 2. On the first issue, even if a party could move to "strike" a reply brief because it was late filed, Live Nation's reply *was* timely filed because Sapieyevski served his response by mail and left a copy with the Clerk of Court. *See* Fed. R. Civ. P. 6(d). As to the second, Sapieyevski has not established that he is

## II.     Legal Standard

A motion to dismiss under Rule 12(b)(6) for failure to state a claim "tests the legal sufficiency of a complaint: dismissal is inappropriate unless the 'plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). "To survive a [Rule 12(b)(6)] motion . . . , a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing such a motion, the Court is limited to "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). "[T]he complaint [must be] construed liberally in the plaintiff['s] favor," and the Court must grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice." *Iqbal*, 556 U.S. at 678. The Court also notes that when, as here, a plaintiff is proceeding *pro se*, the complaint is "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

---

entitled to leave to file a surreply. The "misstatements and distortions" he identifies are merely his disagreements with Live Nation's legal arguments, which he has already had a chance to address. *See Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001). Nor does the Court find that the proposed surreply is particularly helpful to resolving the motion to dismiss. *See Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012). For these reasons, Sapieyevski's motion is denied.

## III. Analysis

Live Nation makes two arguments in favor of dismissal. First, Live Nation contends that its use of "MUSIC HAPPENS HERE" is protected under the First Amendment from liability under the Lanham Act, and thus that all three of Sapieyevski's claims must be dismissed. MTD at 5–11. Second, and in the alternative, Live Nation asserts that Sapieyevski's third claim, for "trademark dilution," must be dismissed because he has failed to adequately plead the requisite element of "fame." *Id.* at 11–12. The Court will address each in turn.

### A. Live Nation's First Amendment Defense

Live Nation asserts that Sapieyevski's claims should be dismissed because the allegedly infringing use is protected under the First Amendment. Specifically, Live Nation urges this Court to adopt the doctrine, first articulated by the Second Circuit in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), by which use of a mark in the title of an artistic work is not subject to liability under the Lanham Act unless it is explicitly misleading. *See* MTD at 5–7. As Live Nation forthrightly points out, although some formulation of that test has been adopted by many circuits, *see id.* at 6–7 (collecting cases), no court in this Circuit has yet to address it. And to resolve the instant motion, the Court need not do so now.

Even if the Court were to accept the *Rogers* framework as a valid defense to Sapieyevski's claims, the Court cannot determine at this stage whether Live Nation's allegedly infringing conduct would fall within the scope of activity protected under that framework. Although Live Nation insists that "MUSIC HAPPENS HERE" is merely the title of an audiovisual work, *see* MTD at 8–9, Sapieyevski never mentions that work in his complaint, and instead alleges that Live Nation has used the mark broadly as a service brand. He claims that Live Nation is using the mark as part of "an initiative in partnership with Spotify USA, Inc.[,] and Hilton Hotels," Compl. ¶ 16 (edits to capitalization), and specifically to designate "services,"

including "music services on-line, in-person, and as written materials about music," which consumers may confuse with similar services offered by Sapieyevski, *id.* ¶¶ 20–22. And Live Nation's trademark application suggests that it intended to use the mark to identify a wide range of content-production services. *See* ECF No. 1-1 at 4; *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The Court must construe these allegations in Sapieyevski's favor. *See Kowal*, 16 F.3d at 1276. Given that standard, and based solely on the face of Sapieyevski's complaint, the Court cannot conclude at this early stage of the litigation that Live Nation's alleged use of the mark in question is entirely immune from liability under the Lanham Act.[2]

Live Nation points to several cases in which a court granted a defendant's motion to dismiss Lanham Act claims based on a First Amendment defense. *See* MTD at 7 (collecting cases). In general, despite Live Nation's insistence otherwise, consideration of the *Rogers* defense on a motion to dismiss appears to be the exception, not the rule. *See Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012) ("Although many courts have considered the *Rogers* test on a summary judgment motion, not on

---

[2] Live Nation claims that the audiovisual work and Live Nation's website displaying that work were "incorporated by reference" in Sapieyevski's complaint and urges the Court to review them. MTD at 2 n.2. In the alternative, Live Nation urges the Court to take judicial notice of the work and the website. *Id.* But while Sapieyevski does refer to Live Nation's website, he never mentions an audiovisual work in his complaint, and thus the Court fails to see how it could nevertheless be "incorporated by reference." *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015). Nor does the Court, particularly at this stage of the proceedings, view the work as the sort of "matter of public record" of which it would be appropriate to take judicial notice. *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) (quoting *Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81, 93 n.5 (D.D.C. 2012)). Moreover, even if the Court did review the described audiovisual work, that would not resolve the material factual issues. Sapieyevski has alleged that Live Nation engaged in broad use of the allegedly infringing mark, far removed from any artistic work. The Court cannot determine the nature and scope of that use based solely on the complaint, the allegedly artistic work Live Nation describes, and Live Nation's website.

a motion to dismiss, the circuit has never stated that a court cannot properly apply the *Rogers* test . . . on a motion to dismiss," provided that "the court is satisfied that . . . no question of fact is presented." (quoting *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990))); *cf. Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 176 n.14 (N.D.N.Y. 2011) (declining to apply the *Rogers* balancing test at the motion-to-dismiss stage). But more importantly, in the cases Live Nation cites, there appeared to be little dispute about the nature and scope of the allegedly infringing use of the mark such that the court could find as a matter of law that the use was protected. *See, e.g.*, *Medina v. Dash Films, Inc.*, No. 15-cv-2551 (KBF), 2016 WL 3906714, at *5 (S.D.N.Y. July 14, 2016) (determining whether use of a mark in a music video explicitly incorporated by the plaintiff in his complaint was protected under the *Rogers* framework). As explained above, that is not the case here.[3]

For these reasons, the Court cannot grant Live Nation's motion to dismiss Sapieyevski's complaint in its entirety on the ground that Live Nation's allegedly infringing use of the mark "MUSIC HAPPENS HERE" is protected from liability under the Lanham Act.

### B. Sapieyevski's Trademark Dilution Claim

Nonetheless, the Court agrees with Live Nation that Sapieyevski has failed to adequately allege the requisite elements of a trademark dilution claim. To state a claim for trademark dilution, a plaintiff must first show that the mark in question is "famous." *Paleteria La*

---

[3] The Court is also aware of the general principle that "summary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails." *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (quoting *Wash. Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)). But the Court has little doubt that the pertinent factual questions presented here could be resolved at the summary judgment stage, and without the "long and expensive litigation" that results in the "chilling" effect this principle seeks to avoid. *Wash. Post Co.*, 365 F.2d at 967–68 (noting the importance of *summary judgment*—as opposed to trial—in vindicating First Amendment defenses and preventing litigation from being used to discourage the exercise of First Amendment rights).

*Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 69 F. Supp. 3d 175, 219 (D.D.C. 2014) (citing 15 U.S.C. § 1125(c)(1)). Whether a mark is "famous" for purposes of a trademark dilution claim "is an either/or proposition"—not "a matter of degree." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1375 (Fed. Cir. 2005)). "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owners." 15 U.S.C. § 1125(c)(2)(A). In making that determination, courts look to four non-exclusive factors: (1) "[t]he duration, extent, and geographic reach of advertising and publicity"; (2) "[t]he amount, volume, and geographic extent of sales"; (3) "[t]he extent of actual recognition"; and (4) "[w]hether the mark [is] registered." 15 U.S.C. § 1125(c)(2)(A). Proving fame requires a "stringent showing" and is therefore "difficult." *Coach Servs.*, 668 F.3d at 1373.

Sapieyevski alleges no facts that meet this high standard. At best, he states only that he began using the mark "MUSICHAPPENS" in 1999, and that he has "made effort and investment to promote [his] music and services" since that time, "serving the public interest of cultural understanding, education, engagement and social interaction through music." Compl. ¶ 23. Even with the Court's obligation to hold *pro se* pleadings to a less stringent standard, those allegations cannot satisfy the heavy burden Sapieyevski must meet to adequately plead the element of fame. He makes no showing that his mark has achieved nation-wide recognition or that it has become a "household name." *Coach Servs.*, 668 F.3d at 1373 (quoting *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1012 (9th Cir. 2004)). Sapieyevski insists that his mark should be "presumed" famous given how long he has used it and operated his associated website. *See* Opp'n at 10–11. While that may be enough to show the *existence* of

trademark rights, it is far short of what is necessary to show that the trademark is sufficiently "famous" such that the owner can bring a claim for trademark dilution.

Accordingly, Live Nation's motion will be granted as to Count III.

IV. **Conclusion and Order**

For all of the above reasons, it is hereby **ORDERED** that Live Nation's Motion to Dismiss, ECF No. 8, is **GRANTED IN PART** and **DENIED IN PART**. Count III of the Complaint is hereby **DISMISSED**. It is further **ORDERED** that Sapieyevski's Motion to Strike or, in the Alternative, for Leave to File a Surreply, ECF No. 11, is **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 20, 2019